Thomas KELLY, Petitioner,

v.

INDUSTRIAL CLAIM APPEALS OF-FICE of the State of Colorado, Western Eagle County Ambulance District, and Pinnacol Assurance, Respondents.

No. 07CA0970.

Colorado Court of Appeals,
Div. VII.

March 5, 2009.

Rehearing Denied April 9, 2009.

Certiorari Denied Aug. 3, 2009.

Irwin & Boesen, PC, Brad R. Irwin, Rick A. Carmickle, Denver, Colorado, for Petition-er.

No Appearance for Respondent Industrial Claim Appeals Office.

Harvey D. Flewelling, Denver, Colorado, for Respondents Western Eagle County Ambulance District and Pinnacol Assurance.

Opinion by Judge FURMAN.

In this workers' compensation claim brought against Western Eagle Ambulance District and its insurer, Pinnacol Assurance (collectively employer), Thomas Kelly (claim-ant) seeks review of a final order of the Industrial Claim Appeals Office (Panel) de-nying benefits for an injury sustained in a motor vehicle accident he alleges occurred in the quasi-course of his employment. We af-firm.

## I. Background

Claimant required knee replacement surgery to treat an admitted industrial injury he sustained in 2003. The surgery was initially anticipated for October 2004, but employer's authorization for that surgery had not been granted. However, in the meantime, the surgeon had a cancellation resulting in an opening for an August 2004 surgery date, and therefore his office sought to reschedule claimant's surgery.

The rescheduling issue arose while claimant was traveling away from home on vacation. Claimant had previously driven from his residence in Gypsum, Colorado, to California, and then arrived in Reno, Nevada, on August 4. The next morning, claimant's wife called claimant and told him that he was scheduled to attend a preoperative appointment in Denver on August 6 at 10:20 a.m. Within an hour of the August 5 call from his wife, claimant began driving, and he testified that he intended to drive from Reno directly to his medical appointment in Denver because he would not have enough time to stop at his home in Gypsum. However, he also testified that he intended to take a longer route, which took him past his home in Gypsum, even though there was a shorter, more direct, route.

After driving about 300 miles, at approximately 1:05 p.m. Nevada time, claimant sustained multiple injuries in a motor vehicle accident near Elko, Nevada. Alleging that he was en route to an authorized medical appointment to treat his 2003 industrial injury, claimant asserted entitlement to workers' compensation benefits for the injuries from the 2004 motor vehicle accident.

The ALJ denied the claim, concluding that claimant failed to prove that he was within the quasi-course of his employment while driving in Nevada. This determination was based on a two-pronged analysis: (1) claimant failed to prove he was en route to the medical appointment at the time of the motor vehicle accident; and (2) the medical appointment was not authorized by employer prior to the accident.

As to the first prong, the ALJ found:

Claimant was not injured between his home in Gypsum and his appointment in Denver but was instead involved in an accident after a vacation in Nevada while on his way to Colorado. Claimant's route to his medical appointment in Denver would have taken him past Gypsum and he would have arrived at his appointment several hours before it was scheduled. The length and duration of [c]laimant's trip from Reno to Denver attenuated the causal connection with his admitted industrial injury to the extent that it exceeded the reasonable range of consequences contemplated by the employment contract.

Regarding the second prong, the ALJ concluded that claimant failed to establish that the August 6 appointment and the August 19 surgery were authorized by employer before the motor vehicle accident occurred. Although authorization for the appointment and surgery was given on August 5, the same day as the accident, the ALJ found that the authorization did not occur until later in the day, after the time of the accident.

The Panel affirmed the ALJ's order based on the conclusion that claimant was not en route to the appointment at the time of the accident. Therefore, the Panel did not reach the authorization issue.

Claimant contends that under the quasi-course of employment doctrine, he is entitled to workers' compensation benefits for his motor vehicle accident. He asserts that the doctrine encompasses travel to a medical appointment even when the employee travels a long distance and does not begin the journey from his home. He also asserts that because he was scheduled for a preoperative appointment by an authorized provider, his appointment was automatically authorized and required no specific preauthorization. Because we conclude that there is no basis for disturbing the ALJ's factual determination that claimant was not en route to the appointment, we, like the Panel, need not reach the issue of authorization. *See Schrieber v. Brown & Root, Inc.*, 888 P.2d 274, 278 (Colo. App.1993)(even though claimant was en route to treatment provider, claimant was not entitled to benefits under the quasi-course of

employment doctrine because treatment was unauthorized).

## II. The Quasi–Course of Employment Doctrine

■ It is well settled in Colorado that the quasi-course of employment doctrine extends workers' compensation benefits to injuries sustained while traveling to and from treatment by an authorized provider. *Turner v. Indus. Claim Appeals Office*, 111 P.3d 534, 537 (Colo.App.2004) (expanding the doctrine to include a vocational rehabilitation evaluation). Because an employer is required to provide medical treatment, and an injured employee is required to submit to it, a trip for authorized treatment becomes an implied part of the employment contract. *Price Mine Serv., Inc. v. Indus. Claim Appeals Office*, 64 P.3d 936, 937 (Colo.App.2003); *see Schrieber*, 888 P.2d at 277 ("Liability is extended because these activities would not have been undertaken but for the compensable injury ...."); *see also* 1 A. Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 10.07, at 10–20 to 10–23 (2007).

Awarding compensation for a motor vehicle accident becomes more complicated when there is a deviation from the route of travel for medical treatment. The Colorado courts have not yet addressed this issue. *See Turner*, 111 P.3d at 535 (claimant was injured after stopping for lunch on the way home from an authorized appointment; although the ALJ "found that neither the restaurant stop nor the wrong turn constituted a deviation from the trip home," deviation issue was not appealed).

Other states, at least those which accept the underlying premise that travel for medical treatment is in theory compensable and lack specific statutes on the topic, have reached different resolutions based on various facts. As a general rule, substantial deviations curtail coverage, while minor deviations do not. *Compare Kodiak Oilfield Haulers v. Adams*, 777 P.2d 1145, 1149 (Alaska 1989) (five-day delay in returning home after work-related treatment ended the compensability of claimant's return trip; "at some point the length of an employee's delay in returning home does function to destroy the trip's work connection regardless of whether it increases or lessens the risk of the return journey"), *and Joplin v. Indus. Comm'n*, 175 Ariz. 524, 858 P.2d 669, 673 (Ct.App.1993)(three-hour delay in returning home after finishing with treatment-related activities ended compensability of claimant's return trip), *with Preway, Inc. v. Davis*, 22 Ark.App. 132, 736 S.W.2d 21, 22–23 (1987) (fact that claimant intended to drop off her son while en route from home to treating physician did not sever chain of causation), *and Laines v. Workmen's Comp. Appeals Bd.*, 48 Cal.App.3d 872, 122 Cal.Rptr. 139, 143 (1975)(fact that journey to authorized medical treatment began from claimant's attorney's office did not sever chain of causation where claimant was injured in a motor vehicle accident while en route; benefits awarded because it would be "too narrow" a rule to limit compensability to "only ... trip[s] from the jobsite, where the injury occurred, to the doctor's office for the first treatment"), *and Taylor v. Dixie Plywood Co.*, 297 So.2d 553, 555–56 (Fla.1974) (compensation not precluded where claimant, while en route from work to authorized treatment on the same day the underlying industrial injury occurred, first went to his home, and after leaving home for the doctor's office was in an automobile accident; benefits awarded because "the deviation, if any, was insubstantial under the circumstances" and there was no "unreasonable or extraneous deviation for a personal purpose"), *and Taylor v. Centex Constr. Co.*, 191 Kan. 130, 379 P.2d 217, 217–18, 222–23 (1963) (where claimant, upon leaving the doctor's office after authorized treatment, stopped at a service station to call his wife, had his truck serviced, ate lunch, and then proceeded to a tavern to buy a bottle of soda, causation was not severed; claimant entitled to benefits for injury that occurred in motor vehicle accident while returning to his jobsite from the tavern).

■ As these cases demonstrate, this issue is highly fact specific. Accordingly, whether a deviation from covered employee travel is substantial enough to break the chain of causation is generally a question of fact for the ALJ. *Joplin*, 858 P.2d at 671; *see* 1 *Larson's Workers' Compensation Law*

§ 10.07, at 10–21 (when compensation is denied for a motor vehicle accident during a trip to a doctor's office, "there is usually some added factor weakening the causal connection"). We will uphold the ALJ's determination if supported by substantial evidence in the record. § 8–43–308, C.R.S.2008.

In deciding this issue, a closely related body of law is instructive. The principles regarding traditional deviation situations—where the employee is on a personal errand during a business trip—can be used to resolve the factual question of whether there is a deviation from the route of travel for quasi-course of employment medical treatment. *See* 1 *Larson's Workers' Compensation Law* § 10.07D n. 10, at D 10–70 (suggesting that the general principles of deviation in § 17 are helpful); *id.* § 17.03[6] ("If the main trip is a personal trip, the business character of a business detour persists throughout the detour."); *see also Pacesetter Corp. v. Collett,* 33 P.3d 1230, 1233–34 (Colo.App.2001) (discussing Colorado cases on traditional deviation issues). The general test for deviation from employment in Colorado is whether the deviation is substantial. *See Phillips Contracting, Inc. v. Hirst,* 905 P.2d 9, 12 (Colo. App.1995) ("When a personal deviation is asserted, the issue is whether the activity giving rise to the injury constituted a deviation from employment so substantial as to remove it from the employment relationship."). This test mirrors that used in the out-of-state cases cited above for deviations from travel for work-related medical treatment.

We adopt that test here for deviations from the route of travel for quasi-course of employment medical treatment, and note that the ALJ primarily decided the case under this standard. By finding that claimant's trip from Reno to Denver "attenuated the causal connection with his admitted industrial injury to the extent that it exceeded the reasonable range of consequences contemplated by the employment contract," the ALJ's ruling embodied the substantial deviation test.

The ALJ was not persuaded that claimant was en route to a medical appointment at the time of the motor vehicle accident; instead, the ALJ determined that claimant was returning to his home in Gypsum. *See Pacesetter Corp.,* 33 P.3d at 1234 (ALJ may rely upon circumstantial evidence in resolving deviation issue, and may also reject uncontroverted evidence). As claimant recognizes, the relevant question is whether "[he] was traveling to the authorized physician's office," and the ALJ—based on the evidence that the longer route claimant was taking would have taken him past his home and, if he continued without stopping, he would have arrived at his appointment several hours before it was scheduled—concluded that claimant was not traveling to the medical appointment at the time of the motor vehicle accident. Thus, the ALJ in effect found that claimant had substantially deviated from the route of travel.

We conclude substantial evidence supports the ALJ's findings because claimant admitted that the shortest highway route from Reno to Denver involved traveling on Interstate 80, and that he chose instead to travel on Interstate 70, which would have taken him past his home. Although he testified that he did not plan to stop at his home or pick up his wife for the appointment, the ALJ was entitled to credit part or none of his testimony. *See Magnetic Engineering, Inc. v. Indus. Claim Appeals Office,* 5 P.3d 385, 387 (Colo.App.2000) (ALJ is entitled to resolve inconsistencies in witness testimony by crediting part or none of it).

Accordingly, the order of the Panel is affirmed.

Judge TERRY and Judge STERNBERG * concur.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2008.